IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID RAY CONNOR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-335-SPS |
| | ) |
| NANCY A. BERRYHILL, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant David Ray Connor requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

---

[1] On January 23, 2017, Nancy A. Berryhill became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Berryhill is substituted for Carolyn W. Colvin as the Defendant in this action.

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts

---

[2] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on November 28, 1967, and was forty-six years old at the time of the administrative hearing (Tr. 33). He has a high school education, and has worked as a security guard (Tr. 35, 49). The claimant alleges that he has been unable to work since July 5, 2012, due to back problems, hypertension, and anxiety (Tr. 153).

### Procedural History

On September 4, 2012, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 133-34). His application was denied. ALJ Bernard Porter conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated October 2, 2014 (Tr. 13-24). The Appeals Council denied review, so the ALJ's opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) with frequent balancing, stooping, and crouching; occasional using foot controls, kneeling, and climbing ramps and stairs; and never crawling or climbing ropes, ladders, or stairs (Tr. 17). The ALJ further found the claimant must not work around unprotected heights or moving mechanical parts, and should avoid exposure to environments where there are temperature extremes (Tr. 17).

Additionally, the ALJ found the claimant required a sit/stand option allowing a change in position at least every thirty minutes, lasting no more than three to four minutes at a time (Tr. 17). Due to psychologically based factors, the ALJ found the claimant could perform simple tasks, make simple work-related decisions, and have no more than occasional interaction with supervisors, co-workers, and the public (Tr. 17). The ALJ also found that the claimant's time off task would be accommodated by normal breaks (Tr. 17). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work that he could perform in the national economy, *e. g.*, document preparer, touchup screener, and semiconductor bonder (Tr. 22-24).

## Review

The claimant contends that the ALJ erred by failing to properly: (i) account for his moderate difficulty in maintaining concentration, persistence, or pace, and (ii) assess his credibility. The Court finds the claimant's contentions unpersuasive for the following reasons.

The ALJ found that the claimant had the severe impairments of lumbar disc disease with radiculopathy, hypertension, depressive disorder, and anxiety disorder (Tr. 15). The relevant medical records reveal that the claimant underwent a left endoscopic discectomy at L4-5 on January 10, 2010 (Tr. 241-45). On March 3, 2012, he underwent a posterior lumbar laminectomy, discectomy, and fusion at L4-5 with hardware placement (Tr. 215-26). On June 22, 2012, Dr. Alvis noted the claimant was being very active and making slow improvement post-surgery (Tr. 274). By September

21, 2012, Dr. Alvis noted the claimant was making very little progress and referred him to pain management (Tr. 273).

The claimant established care with Dr. Joe Voto at Norman Pain Management on October 8, 2012 (Tr. 317-18). He noted the claimant's range of motion was limited due to pain, that straight leg raise tests were negative bilaterally, and that the claimant had full strength in his lower extremities and normal reflexes bilaterally (Tr. 318). Dr. Voto's mental status examination of the claimant was normal (Tr. 318). He assessed the claimant with lumbar degenerative disc disease, lumbar radicular pain, and failed back syndrome (lumbar) (Tr. 318). Dr. Voto's findings were similar at examinations in December 2013, April 2014, and June 2014 (Tr. 349-50, 357-63).

On November 15, 2012, Dr. Jack Howard performed a consultative physical examination of the claimant (Tr. 328-34). He found some limited range of motion in the claimant's back and neck, and positive straight leg raise tests in both the sitting and supine positions, but his examination was otherwise normal (Tr. 330-34).

On December 5, 2012, Dr. Parind Shah performed a consultative mental status examination of the claimant (Tr. 337-38). Dr. Shah noted the claimant had a good affect, euthymic mood, intact abstract thinking, adequate judgment, and an intelligence quotient of eighty or higher (Tr. 337). Dr. Shah assessed the claimant with major depression, and assigned a Global Assessment of Functioning ("GAF") score of sixty-five (65). She opined that the claimant's symptoms would improve over the course of twelve months with proper treatment (Tr. 338).

State agency physicians reviewed the record in January 2013 and June 2013 and found the claimant could perform a limited range of light work (Tr. 60-63, 71-75). State agency psychologists reviewed the record in January 2013 and April 2013 and found the claimant's mental impairments were non-severe (Tr. 58-59, 70-71).

On May 30, 2013, Dr. Thomas Johnston performed a consultative physical examination of the claimant (Tr. 342-47). He found reduced range of motion with pain in the claimant's lumbosacral spine and hips, but his neck and thoracic spine were non-tender with full range of motion (Tr. 345-47). Dr. Johnston's mental status exam was normal, and he assessed the claimant with low back pain status post-surgery with recurrent pain, radiculopathy to the left leg, depression, and anxiety (Tr. 344).

At the administrative hearing, the claimant testified that that the primary reasons he could not work were his inability to sit or stand long hours, his need to rest, and the effects of his pain medication on his ability to make decisions and to think (Tr. 38). As to specific limitations, he stated he could sit for thirty minutes at a time, stand for thirty minutes at a time, lift a gallon of milk, and walk one hundred fifty feet before experiencing severe pain (Tr. 42).

In his written opinion, the ALJ summarized the claimant's hearing testimony and the medical record. He discussed all of the opinion evidence in the record. The ALJ gave some weight to the state agency physicians' and psychologists' opinions, but considering the additional medical records and the claimant's testimony, further limited the claimant to sedentary work with a sit/stand option, additional postural and environmental restrictions, simple tasks, and limited interaction (Tr. 21).

The claimant first argues that although the ALJ accounted for task complexity and time off task in his RFC assessment, he nevertheless erred because the limitation of "simple tasks and simple work-related decisions" did not adequately account for his moderate difficulties in maintaining concentration, persistence, or pace. The Tenth Circuit has stated that an "ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment." *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015). Although "[t]here may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations," *Id.*, at 1204, the Court finds here that the RFC limitations adequately accounted for his moderate limitations. Specifically, the ALJ discussed the claimant's mental status testing at step four and concluded that it showed no significant cognitive or psychological abnormalities that would preclude performing simple tasks and occasional interaction (Tr. 20-21). Thus, the ALJ limited the claimant to unskilled work, and then further clarified that he must have normal work breaks (Tr. 17). *See Nelson v. Colvin*, 655 Fed. Appx. 626, 629 (10th Cir. 2016) ("Unskilled work does not require . . . the ability to maintain attention and concentration for extended periods, an area in which Dr. Tabor noted a moderate limitation.").

Finally, the claimant contends that the ALJ erred in analyzing his credibility because he improperly relied on minimal daily activities and did not make specific findings with respect to his pain. Under the applicable standard at the time of the ALJ's decision, a credibility determination would be entitled to deference unless there is some

indication that the ALJ misread the medical evidence as a whole. *Casias,* 933 F.2d at 801. An ALJ could disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But the ALJ's credibility findings were required to be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility determination "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In this case, the Court finds that the ALJ set out the appropriate credibility factors, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, he gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, the ALJ noted inconsistencies between the claimant's testimony and: (i) the treatment notes from Dr. Alvis, Dr. Voto, and Dr. Davis (ii) the consultative examination findings of Dr. Howard, Dr. Johnston, and Dr. Shah; (iii) his daily activities; and (iv) the lack of specialized mental health treatment (Tr. 20-22). Accordingly, the ALJ's determination here is entitled to deference and the Court finds no error in analyzing the claimant's credibility.[3]

---

[3] The Court notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The Court finds that even under the new standard, the ALJ properly evaluated the claimant's credibility.

The essence of the claimant's appeal is that the Court should re-weigh the evidence and determine his RFC differently from the Commissioner, which the Court simply cannot do. The ALJ specifically noted every medical record available in this case, *and still concluded* that he could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). *See also Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), citing 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 13th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**